The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Welcome to the Ninth Circuit. I'm glad to be joined by my colleagues Judge Tallman and Judge Forrest. We'd like to welcome everybody here by video and in the courtroom today. We'd ask that you just pay attention to your time and let us know if you want to reserve any time for rebuttal and try and sum up as your time is expiring. We will go ahead and proceed with the first argument. Well, I guess we have three cases to submit that have already been submitted on the briefs, Angel Sanchez v. Garland, Donna Sid v. Garland, and Hester v. Kijakazi. We have four cases today scheduled for argument. The first is Farlow v. Kijakazi, and we'll hear that by video. And Mr. Dellert, I think, you may begin. Good morning, Your Honors. Christopher Dellert representing Ruth Farlow, the appellant in this case. And I would like to reserve any time for rebuttal. The overarching issue in this case is whether the administrative law judge's finding that Ms. Farlow could perform medium exertion work was supported by substantial evidence where he rejected the only medical opinion in the record and then also rejected the information from Ms. Farlow and her husband that she could only be active for a few minutes before needing to rest. Can I ask you about, just to focus in on the medical opinion that was rejected? This is Dr. Stanley. He's a non-treating, non-examining physician, is that correct? Correct, Your Honor. What is the standard, because you seem to be arguing that the ALJ didn't provide clear and convincing reasons for rejecting it, but that doesn't seem to be the standard for non-treating, non-examining doctors. They just have to consider the medical opinion in that case. Would you agree with that, or are you taking a different position on that? Well, the decision has to be supported by substantial evidence. The exact standard review, because we're using the old standards, the pre-2017 standards based on the filing date, but this is the only medical opinion on her functioning in the entire record. Everything else is just office visits that don't really go into any kind of depth. I understand that, but I think part of this goes to whether, you know, you're right that the overall standard of review is substantial evidence, but when the ALJ is rejecting, as you pointed out, has rejected the medical opinion here, what does he have to consider? Does he have to give clear and convincing reasons, or does he just have to consider it? That's the question I'm asking. I thought you were arguing that he had to provide clear and convincing reasons. Maybe you're backing away from that. There doesn't seem to be – this kind of is an outlier case. There's not really much caseload that discusses, when the only opinion is from a reviewing source, what is the standard of review. So, essentially, it comes down to substantial evidence. Regardless of which standard applies, is there a basis for the weighing of the opinion? And the standard wouldn't matter on whether it was the only opinion or one of many. The standard is dictated by the type of doctor. Is that right? To an extent, yes, but as long as the opinion is supported, you know, have they given a basis for their opinion? If you were contrasting, then his would definitely warrant less weight, but, you know, if it's the only opinion on functioning, the ALJ has to have some kind of basis for his opinion. He can't interpret the objective findings on his own. He needs some kind of input from a medical source. Otherwise, he's just eyeballing these examination results and making his own conclusions on what is really a very unique kind of impairment. Well, I'm not really sure what to do with that argument because it's not like this one opinion was the only thing in the medical record. There is other medical evidence in the case. There's just not opinions, as you've pointed out. And then it's your client's burden to present a record that supports her claim of disability. So I guess if the only opinion that has been presented in the record is rejected by the ALJ and the ALJ's decision is supported, then that's not an error by the agency. The only thing he refers to is her presentation at these appointments. None of this gives any kind of insight into her level of functioning, particularly related to her fatigue, which is what her primary complaint is, that she gets fatigued after a few minutes. And that is a known after effect from having a heart attack. So does he have the information necessary to draw the conclusion that he did? When he was faced with at least a medical opinion that did consider this and found just even light work. So is there a requirement in the law that an ALJ develop a record beyond what the claimant has presented? If it's not sufficient to make the findings that he's making. He's drawing conclusions, but he doesn't have a basis for them. Nothing in what he looked at tells him that she could lift 50 pounds for two hours a day and 25 pounds for up to six hours a day. Counsel, what do we do with the error by Dr. Staley in reliance on the prior ejection testing at 50% when the more recent ejection testing was above normal at 70%? We're drawing conclusions on what these findings mean in relation to her fatigue, which is what, again, that's her primary limiting factor. So do these actually have any correlation to the symptoms that she's alleging that cause the most limitation? But as I understand ejection rate, it essentially is a measure of the functioning of the heart, is it not? So that if her heart is now functioning normally, wouldn't the result be less fatigue? And doesn't that constitute either a germane or a clear and convincing reason to discount Dr. Staley's opinion based on the medical record? Sorry, Aaron. I don't have the medical knowledge to know whether or not. I haven't seen anything in my research that shows that there's a correlation between the two. Fatigue is just, fatigue happens. And the ALJ did point to a stress test as supporting his finding. He noted that she was able to complete the stress test. But the stress test that he was referring to doesn't show any evidence that she was actually put on a treadmill or anything. The speed is at zero. The grade is at zero throughout. And it only lasted two and a half minutes. But wouldn't an ejection rate, I'm sorry, I misspoke. It was actually 77%. Wouldn't a normal ejection rate support passing a stress test? If your heart is operating normally, you shouldn't have too much difficulty with the stress test, should you? But for the stress test, all she was doing was sitting there. I honestly don't know. I don't have the medical knowledge. I just want to say, if the one physician who did offer any kind of opinion noted that, then if the evidence is ambiguous as to the difference between these two different tests and what it means, then the ALJ could have called on a medical consultant to say. So is your position then that the ALJ had an obligation to call a medical expert to develop the record more fully on this point? I didn't see that argument raised in your brief. No, it was not raised there. But the ultimate argument was that the evidence before him did not support the conclusions. There's no way to definitively say she could perform medium work just based on these stress tests when there's no direct correlation, and he's drawing his own medical opinion about what is the meaning of the stress test. That's kind of what was intended. So if he rejects Dr. Stanley's medical test, which your best argument for that appears to be, well, he had to because that was the only evidence in there, but maybe you're making more of a nuanced argument, which is he could have said, hey, there's no evidence here to support the claim, and maybe that would have been enough. But when he veered off into findings that rejected some of these other positions, that was error. Is that a more concrete recitation of your argument? To some extent, yes, yes. I mean, the problem with your position seems to be it would open up the door to just present one medical doctor as evidence and perhaps as weak evidence because your position would be that the ALJ can't reject that because it's the only one in there. That doesn't seem to be the right incentive for a plaintiff bringing these types of cases. I mean, they have to bear the burden, and if they present a doctor that the ALJ rejects, then there seems to be a void of evidence there, other than her own testimony. Yes, we're talking about an individual who did not have insurance, which is why the record is so sparse during the relevant time period here. She's also an older individual. So, you know, I can see, like, if somebody – there are a lot of cases coming up now that there are not any medical opinions. So that does – I can see where the lack can be placed on the consultant. Let me ask you about the statements by the husband because the ALJ rejected those as well and, you know, just basically said they're not a medical source. Even if there were error here on rejecting the husband's statement, was there something additional that the husband's statements would have added, other than her own testimony or the medical records that were in the record? His statements do mirror hers. They just provide another piece of evidence showing that, you know, independently, this is what his observations have been, that she can't do that. Now, the ALJ did not make any kind of findings saying he was rejecting her. That's information for the same reasons. So that's, you know, kind of a technical argument. My question was just whether he added anything. His statements added anything that – if you could point me to anything that his statements put in the record that wasn't already in the medical record or in her statements. Or if you think – If it's not in her statements, it just goes to show that, you know, her reports that she could only do things for 5 or 10 minutes were backed up by his own observations that if she tried to do anything more than 5 or 10 minutes, then he would – that she would become fatigued and need to take a break. Do you want to reserve some time for rebuttal? Yes, Your Honors. Okay. We'll hear from the government. May it please the Court and Counsel, Lars Nelson on behalf of the Commissioner of Social Security. This Court should affirm the decision of the ALJ because it is supported by substantial evidence. It is important noting in this particular case, because it is a Step 4 case, that the claimant in this case, Ms. Farlow, bears the burden at every single finding along the process. And in this case, her evidence that she wants this Court to rely on simply does not hold together. She alleged that she could only walk 2 to 3 yards without needing to take a break. Her husband extends that to 100 yards. And then Dr. Staley, the opinion that she wants to rely on, says that she can stand and walk for 6 hours in a day. She says that she can only lift 25 pounds. Her husband says 35 pounds. And again, Dr. Staley's opinion conflicts with that. The evidence upon which she relies is self-contradictory. Going to some of the questions presented, this Court was very clear in the Sousa decision that because it is a non-examining opinion in this case that is challenged, the ALJ only had to provide what is essentially germane reasons to reject it. The ALJ provided those reasons, specifically noting the fact that Dr. Staley had relied on exclusively a 50% ejection fraction rate at 74 of the decision, where the opinion specifically asks RFC additional explanation. That is the only medical evidence that Dr. Staley cites. And the ALJ noted that that was contradicted by that 77% ejection fraction rate. We can look at other records that the ALJ cited. For example, at 277, that 77% ejection fraction rate is referred to. And at 277, the treatment notes describe her as doing well from a cardiac standpoint. She's busy with housework. She's doing fine, and she's asymptomatic. And then on top of that, there are medical findings of normal cardiac functioning, normal respiratory functioning, which is contrary to her allegations that she becomes winded and fatigued, and then a normal gait, which undermines her allegations that she has problems walking. The ALJ here was constrained by the record that was before him, and the ALJ reached a reasonable conclusion based upon that evidence that is consistent with the statute, all the regulations, and this court's case law, that the ALJ is well within his authority in doing so. And because the ALJ's decision is supported by substantial evidence and free from prejudicial error, the commissioner would ask this court to affirm, unless the court has any other questions. I want to ask a little bit about the standard for this type of medical opinion. Our Sousa case, I think this is a quote, says that an ALJ can reject a non-treating, non-examining doctor by reference to specific medical evidence in the medical record. A minute ago, you said that's basically a Germain findings standard. I don't think we've ever said that, so what's your basis for that? Well, Germain would just be the lowest standard that this court has ever articulated. But yes, the Sousa standard, I would not ask the court to deviate from Sousa or go beyond that. Just in terms of the standards this court has used, Germain, clear and convincing, specific and legitimate, Germain is the lowest of those. And I think that that would be, as I believe Judge Tolman mentioned, basically comparable. Any other questions? I don't. Okay, thank you. We'll give time for rebuttal. I guess the only thing I really, a lot of the evidence we brought on were observations made in settings that were not comparable to even doing, like, housework. So I just don't feel that the conclusion that she can perform medium work, which is pretty extreme, I just don't feel that's supported by substantial evidence. And that was our position. Okay, counsel. Any other questions? Okay, thank you both for your arguments today, and the case is now submitted.
judges: TALLMAN, NELSON, FORREST